IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-291-FL

| | |
|---|---|
| BARBARA AHERN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| OMNICARE ESC LLC, a subsidiary of ) | |
| OMNICARE, INC. ) | |
| ) | |
| Defendant. ) | |

This employment-related action comes before the court on the motion (D.E. 21) by defendant Omnicare ESC LLC ("defendant") to dismiss the amended complaint of plaintiff Barbara Ahern ("plaintiff"). Plaintiff filed a response in opposition to the motion (D.E. 24) and defendant filed a reply (D.E. 27). The motion was referred to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that defendant's motion be granted.

## BACKGROUND[1]

### I.   AHERN'S ALLEGATIONS

Defendant hired plaintiff as a Quality Assurance Consultant in its Wilson, North Carolina office in 2007. (Am. Compl. (D.E. 18) ¶ 10). Defendant's Wilson office operates a pharmacy which services nursing homes and is open seven days a week. (*Id.* ¶¶ 10, 17). Kevin Gott ("Gott") was plaintiff's supervisor. (*Id.* ¶ 11).

---

[1] The summary of the facts reflects the principles set out in the Discussion section below that the allegations must be viewed favorably toward plaintiff.

Pharmacy employees worked on call on the weekends. (*Id.* ¶ 17). Although pharmacy technicians generally volunteered for on call work, plaintiff initially worked on call in the pharmacy occasionally, but stopped doing so when her husband objected. (*Id.*).

Soon after plaintiff was employed in the Wilson office, she was informed that Gott was sexually attracted to and flirted with subordinate female employees. (*Id.* ¶ 12). Plaintiff was also told of an overt sexual affair Gott had with a subordinate female employee prior to plaintiff's employment. (*Id.*). Plaintiff was told that the female employee was ultimately terminated and defendant's employees in the Wilson office were advised not to discuss the matter. (*Id.* ¶ 13).

During plaintiff's employment, she obtained a tattoo with the word "honey" slightly above her right breast. (*Id.* ¶ 14). "On numerous occasions, when plaintiff was alone in a room with Gott," Gott demanded, "'Show me your honey.'" (*Id.* ¶ 15). Plaintiff declined and found the demand offensive. (*Id.*). Plaintiff did not, directly or indirectly, invite or solicit Gott's conduct. (*Id.*).

Also during plaintiff's employment with defendant, Gott engaged in and continued a romantic relationship with Kim Bissonette ("Bissonette"), another subordinate female employee. (*Id.* ¶¶ 16, 18). Gott and Bissonette displayed their affection for one another in the presence of other female employees. (*Id.* ¶¶ 18, 19).

In May 2007, Gott told plaintiff to begin training Bissonette as a Quality Assurance Consultant. (*Id.* ¶ 21). Bissonette, however, did not have the education, experience, or training to qualify her for this position. (*Id.*). In addition, Gott, despite knowing plaintiff's husband objected, pressured plaintiff to work on call in the pharmacy. (*Id.* ¶ 20). Plaintiff refused and Gott did not change plaintiff's job requirements to include such work. (*Id.*).

2

On the evening of 16 May 2007, plaintiff met Gott and Bissonette for dinner after visiting one of defendant's facilities in Wilmington, North Carolina. (*Id.* ¶ 22). At dinner, Gott told plaintiff and Bissonette there was a Quality Assurance Consultant position available in the Wilson office; however, no such position was available at that time. (*Id.*). Also, Gott again asked if plaintiff would work on call, and plaintiff again informed Gott that she could not. (*Id.* ¶ 23). Gott stated that he would do the on call work if she could not. (*Id.*). Later that evening, Bissonette, upset and crying, left plaintiff a voice mail. (*Id.* ¶ 25). Plaintiff, unable to contact Bissonette, called Gott and informed him of the voice mail. (*Id.* ¶¶ 25, 26). During their conversation, Gott repeatedly and insistently asked what Bissonette told plaintiff. (*Id.* ¶ 26).

A few days later, on 21 May 2007, Gott and plaintiff again discussed whether plaintiff could work on call. (*Id.* ¶ 29). When plaintiff again informed Gott that her husband objected, Gott stated that plaintiff must work on call or seek another job. (*Id.* ¶ 29, 30). After asking for plaintiff's resignation, Gott stated that on call work was now a requirement of the Quality Assurance Consultant position. (*Id.* ¶ 30). Plaintiff told Gott she could work on call that day, but could not in the future. (*Id.* ¶ 31). The same day, Gott told plaintiff that she was acting as if she had something hanging over his head. (*Id.*).

On 25 May 2007, Gott informed plaintiff that 8 June 2007 was plaintiff's final day as an employee. (*Id.* ¶ 33). Subsequently, plaintiff filed a complaint with corporate compliance. (*Id.* ¶ 34). After an investigation, plaintiff was terminated on 21 June 2007 for insubordination. (*Id.* ¶ 35).

Bissonette then replaced plaintiff as the Quality Assurance Consultant in the Wilson office. (*Id.* ¶ 37). Bissonette does not work on call in the pharmacy, and at least two other females

employed in the pharmacy have refused to work on call. (*Id.* ¶ 38). Moreover, Bissonette, without receiving disciplinary sanctions, refuses to carry out Gott's directives. (*Id.* ¶ 39).

Plaintiff alleges Gott's demand that plaintiff work on call was a pretext. (*Id.* ¶ 41). Plaintiff maintains that the real reason she was terminated was because Gott was worried about what Bissonette told plaintiff and wanted to warn other employees what would happen if they interfered with Gott's romantic pursuits. (*Id.* ¶ 40). In addition, plaintiff alleges Gott terminated plaintiff to promote Bissonette, a subordinate female employee with whom he was romantically involved, into plaintiff's position. (*Id.* ¶ 41).

## II. PROCEDURAL HISTORY

On 2 July 2008, plaintiff filed her initial complaint in this action (D.E. 1). On 3 December 2008, defendant filed a motion for dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and a supporting memorandum (D.E. 9), and plaintiff subsequently filed a response in opposition (D.E. 14). Following a telephone conference with counsel (D.E. 15), the court entered an order allowing plaintiff to amend her complaint (D.E. 16). Plaintiff timely filed an amended complaint on 20 January 2009.

In her amended complaint, plaintiff asserts two claims: (1) discrimination against plaintiff based upon her sex in violation of 42 U.S.C. § 2000e, *et seq.* and (2) sex discrimination in employment in violation of the public policy of North Carolina as expressed in North Carolina General Statute § 143-422.2. (Am. Compl. ¶¶ 42-48). The amended complaint seeks compensatory damages, attorneys' fees, and costs. (*Id.* ¶¶ 49-51).

Defendant filed the instant motion to dismiss and supporting memorandum (D.E. 22) on 13 February 2009. In its motion, defendant seeks dismissal of both of plaintiff's causes of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I. RULE 12(b)(6) STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff.

5

*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 129 S. Ct. at 1951.

## II. DEFENDANT'S MOTION TO DISMISS

In its motion, defendant asserts that plaintiff's amended complaint fails to state a claim under Title VII because preferential treatment towards a paramour is not discrimination based on sex. Defendant further asserts that to the extent the amended complaint purports to allege a Title VII claim for hostile work environment, which defendant disputes, it fails to set forth facts that rise to the level of an abusive work environment. Finally, defendant contends that plaintiff's claim for wrongful discharge in violation of North Carolina's public policy under N.C. Gen. Stat. § 143-422.2 also fails because North Carolina courts apply the Title VII standard to that cause of action. The court turns now to an analysis of defendant's contentions.

### A. Title VII Sex Discrimination Claim Based on Preferential Treatment of a Paramour

Defendant contends that plaintiff's amended complaint fails to state a valid claim under Title VII because it does not allege discrimination based on sex. Title VII makes it unlawful for an employer "to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). In all sex discrimination cases, the fundamental question is whether a plaintiff was

6

the victim of discrimination *because of* the plaintiff's sex. *See Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) ("We have made clear that only harassment that occurs because of the victim's gender is actionable."). "'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (Ginsburg, J., concurring)).

Even considered in the light most favorable to plaintiff, the allegations in her amended complaint reveal no indication that plaintiff's termination was because of her sex. The court agrees with defendant's assessment that the primary charge of plaintiff's amended complaint is that Gott terminated her under the pretext of insubordination so that he could promote Bissonette to plaintiff's position. Defendant correctly contends that this alleged basis for termination, on its face, is not because of plaintiff's gender, but rather because of Gott's desire to give preferential treatment to an employee with whom he had an intimate relationship.

The Fourth Circuit has expressly held that a supervisor's preferential treatment of a paramour on the basis of a sexual relationship that is consensual is not discrimination based on sex.[2] *See Becerra v. Dalton*, 94 F.3d 145, 149-50 (4th Cir. 1996) (citing *DeCintio v. Westchester County*

---

[2] Title VII plaintiffs have attempted to assert that the subject relationship may support a claim for sex discrimination even if it is consensual on the basis of EEOC regulation 29 C.F.R. § 1604.11(g). This regulation provides that "[w]here employment opportunities or benefits are granted because of an individual's *submission* to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit." 29 C.F.R. § 1604.11(g) (emphasis added). In their general rejection of this interpretation of the regulation, courts have concluded that the word "submission" in the regulation indicates that the relationship must be non-consensual. *See DeCintio*, 807 F.2d at 307-08 ("The word 'submission,' in this context, clearly involves a lack of consent and implies a necessary element of coercion or harassment."); *Alberto v. Bank of America*, 1995 WL 562170, at *5-6 (N.D. Cal. 13 Sept. 1995) (declining to adopt plaintiff's interpretation of 29 C.F.R. § 1604.11(g) that preferential treatment based on both consensual and coercive sexual relationships between employer and employee are prohibited).

7

*Medical Ctr.*, 807 F.2d 304, 307 (2d Cir. 1986) (rejecting Title VII sex discrimination suit brought by male employees in response to higher salary paid to female employee who had a consensual romantic relationship with department administrator)); *Mundy v. Palmetto Ford, Inc.*, No. 92-1041, 1993 WL 280340, at *2 (4th Cir. 27 July 1993) (finding no actionable Title VII claims by male employee alleging that another employee was receiving preferential treatment because of her consensual affair with a supervisor); *Autry v. N.C. Dept. of Human Resources*, 820 F.2d 1384, 1387 (4th Cir. 1987) (holding that a "voluntary ongoing friendship would be an inappropriate basis for a Title VII suit."); *see also Murray v. City of Winston-Salem*, 203 F. Supp. 2d 493, 501-02 (M.D.N.C. 2002) ("Sexual favoritism is not sex discrimination because plaintiffs are not prejudiced because of their sex; rather, they are discriminated against because the official prefers the paramour."); *Candelore v. Clark County Sanitation Dist.*, 752 F. Supp. 956, 961 (D. Nev. 1990) ("[P]referential treatment of a paramour, while perhaps unfair, is not discrimination on the basis of sex in violation of Title VII . . . ."). In *Becerra*, the Court rejected the claim of an employee in the Office of Naval Intelligence that his supervisor discriminated against him and created a sexually hostile environment by aiding in the promotion of the supervisor's paramour, a female employee. *Becerra*, 94 F.3d at 149-50. The court held that the promotion of a female employee from whom the supervisor had accepted sexual favors did not constitute discrimination under Title VII. *Id.*

Here, plaintiff makes no allegation that the relationship between Bissonette and Gott was non-consensual or coerced. In fact, the allegations in her amended complaint indicate otherwise. Plaintiff alleges that Gott and Bissonette displayed their affection for one another in the presence of other female employees. (Am. Compl. ¶ 18). Plaintiff further alleges that, at an office party, Bissonette asked Gott to spend the night with her in her home. (*Id.* ¶ 19). Thus, even assuming, as

alleged by plaintiff, that Gott terminated plaintiff so that he could promote Bissonette to plaintiff's position, there is no indication that the actions were taken because of plaintiff's sex, but rather were a result of Gott's preference for Bissonette, which arose out of his consensual relationship with her.

In addition to plaintiff's allegations that she was fired to effectuate Bissonette's promotion, plaintiff alleges that her firing was intended to be a warning to "other women in the office" not to interfere with Gott's "intra office sexual pursuits." (Am. Compl. ¶ 40). Despite plaintiff's allegation that the warning was addressed to other women, plaintiff has failed to allege facts that the warning would not also apply to any male employee that might interfere with Gott's office affairs. The same is true for plaintiff's allegation that she was fired because she knew something about what had occurred between Gott and Bissonette in Wilmington and, therefore, "had something hanging over [Gott's] head . . . ." (*Id.*). Again, there is no evidence that Gott's concern was based on plaintiff's gender. *See Ellert v. Univ. of Tex.*, 52 F.3d 543, 546 (5th Cir. 1995) ("Even if [plaintiff's] knowledge of [her supervisor's affair with a subordinate] was the true animus behind the discharge decision, it was a motivation that did not rely upon [plaintiff's] gender and, as such, it was not within the ambit of Title VII's protections."). Thus, the court concludes that plaintiff has failed to allege sufficient facts to show that her termination or the related charges of insubordination were because of her sex as required under Title VII.[3]

---

[3] Nor would an inference of sexual discrimination arise if the burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) were applied. At the first step, to establish a prima facie case, the plaintiff must generally show that: "'(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc)). Irrespective of the other elements of this test, the amended complaint does not satisfy the fourth element because it alleges expressly that plaintiff's position was filled by another female. (Am. Compl. ¶ 37).

9

B.  **Title VII Hostile Work Environment Claim**

In her response to defendant's motion, plaintiff argues that her amended complaint alleges more than an isolated instance of preferential treatment of a paramour. Rather, she contends that she has alleged the type of widespread favoritism that creates a hostile work environment.[4] (Pl.'s Resp. at 4).

Generally, to make out a hostile work environment claim, "a female plaintiff must prove that the offending conduct: (1) was unwelcome; (2) was based on her sex; (3) was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) was imputable to her employer." *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). In determining whether a hostile work environment exists, a court must look at the totality of the circumstances, which includes consideration of the following relevant factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Plaintiff cites Equal Employment Opportunity Commission ("EEOC") Notice No. 915-048, § C to support the proposition that widespread favoritism may constitute a hostile work environment claim. (Pl.'s Resp. at 3-4). While the EEOC's interpretation of Title VII is not binding on this court, "it is nevertheless appropriate to consider the EEOC's interpretation because of the EEOC's charge to enforce the Act." *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 750 (1996). The EEOC

---

[4] The court acknowledges defendant's assertion that plaintiff's amended complaint fails to put defendant on notice that she intended to raise a hostile work environment claim. However, the court disagrees that plaintiff's amended complaint cannot be fairly read to raise such a claim. In particular, plaintiff specifically alleges that plaintiff's termination "added to an already hostile and abusive work environment." (Am. Compl. ¶ 40).

10

states that widespread favoritism based upon consensual sexual relationships may give rise to a hostile work environment claim where such behavior conveys an implicit message "that the managers view women as 'sexual playthings,' thereby creating an atmosphere that is demeaning to women." EEOC Notice No. 915-048, § C (12 Jan. 1990) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *see Ocheltree,* 335 F.3d at 331 ("Title VII is violated '[w]hen the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Harris*, 510 U.S. at 21)).

The court disagrees that plaintiff has alleged the "widespread favoritism" necessary to rise to the level of an actionable hostile work environment claim. Among other reasons, during her employment with defendant, plaintiff witnessed favoritism by a single supervisor toward a single employee. In order for widespread favoritism to constitute a hostile work environment, courts require plaintiffs to show that multiple supervisors engaged in the challenged conduct. *McGinnis v. Union Pacific Railroad*, 496 F.3d 868, 874 (8th Cir. 2007) ("A single allegation against [a supervisor] cannot constitute widespread sexual favoritism."); *Bartniak v. Cushman & Wakefield, Inc.*, 223 F. Supp. 2d 524, 532 (S.D.N.Y. 2002) ("Widespread favoritism refers to an environment where multiple supervisors are engaging in [the] behavior . . . ."). There is, of course, the other alleged affair Gott had with a subordinate prior to the start of plaintiff's employment with defendant, about which she learned from other employees. (Am. Compl. ¶ 12). However, the contribution of this other alleged affair to any hostile work environment is significantly diminished because plaintiff did not witness the conduct during her own employment. *See Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 757 (7th Cir. 1998) (noting that an employee could not use statements of a

11

co-worker to make out a Title VII violation because, in part, the employee was not exposed to the conduct). The court concludes that, even under a strained analysis, the circumstances alleged by plaintiff do not constitute "widespread favoritism."

Were the court to continue its hostile work environment analysis to include plaintiff's allegation that Gott demanded "on numerous occasions" to see plaintiff's tattoo, it would still conclude that Gott's alleged conduct did not create a hostile work environment. (Am. Compl. ¶ 15). Admittedly, while hostile work environment claims often involve conduct expressly alleged to be more frequent than alleged here, the court believes that the frequency alleged by plaintiff, viewed in the light most favorable to her, could be sufficient to support a hostile work environment claim. *See E.E.O.C. v. R & R Ventures*, 244 F.3d 334, 337 (4th Cir. 2001) (supervisor made sexual comments to an employee every time the two worked together); *Patterson v. County of Fairfax*, No. 99-1738, 2000 WL 655984, at *4 (4th Cir. 18 May 2000) (Title VII is not violated when there were only a few incidents of sexually motivated behavior over a period of time); *Hopkins*, 77 F.3d at 753 ("'A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.'" (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995)); *E.E.O.C. v. Fairbrook Medical Clinic, P.A.*, No. 5:07CV94, 2009 WL 929103, at *4 (W.D.N.C. 2 Apr. 2009) (stating that the unwelcome conduct was not particularly frequent because the inappropriate comments only happen once or twice a week); *Spencer v. General Electric Co.*, 697 F. Supp. 204, 213 (E.D.Va. 1988) (supervisor engaged in sexual horseplay on a daily basis, which included physically sitting on employees laps and touching employees in an intimate manner).

However, the alleged conduct clearly does not reach the requisite level of severity. Gott's unwelcome conduct was not physically threatening to plaintiff. *See Hartsell*, 123 F.3d at 773 (noting

that the plaintiff was not inappropriately touched); *Fairbrook Medical Clinic*, 2009 WL 929103, at *4 (noting the "conduct was not physically threatening, and [there was never any] type of inappropriate physical contact with [the plaintiff]"). Plaintiff does not allege that Gott demanded to see her tattoo in exchange for preferential treatment. (Am. Compl. ¶ 41). In fact, plaintiff states that Gott was not romantically interested in her. (*Id.*). While plaintiff found Gott's comments offensive (*id.* ¶ 15), courts have consistently held offensive utterances, standing alone, do not constitute a hostile working environment. *See Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50 (1st Cir. 2006) (holding that "mere offensive utterances that did not unreasonably interfere with the employee's work performance do not amount to harassment . . . ."); *see also Meritor*, 477 U.S. at 67 ("[A] mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to sufficiently significant degree to violate Title VII." (internal citations omitted)). Finally, plaintiff has not alleged that Gott's conduct interfered with her work performance. *See Fairbrook Medical*, 2009 WL 929103, at *4 (noting the plaintiff did not miss work as a result of the unwelcome conduct).

Thus, considering the totality of Gott's alleged conduct in this case, the court concludes that plaintiff's amended complaint does not state a claim for sex discrimination under a theory of hostile work environment. *See, e.g., Murray*, 203 F. Supp. 2d at 499 (holding that a female employee did not establish a hostile working environment when her male supervisor yelled at her in meetings, gave his paramour preferential treatment, commented to the employee about his past sexual encounters while rotating his pelvis, rubbed and kissed his paramour in front of other employees, put his arm around the employee, told the employee his thoughts of her in jeans, rubbed the employee's thighs briefly during a crowded meeting, and made "ummm" noises and stared at the employee as she

walked by him).[5] Accordingly, plaintiff has failed to state an actionable claim of sex discrimination under Title VII under either theory advanced.

C.   **North Carolina Claim for Wrongful Discharge**

The court also concludes that plaintiff has failed to state a claim for wrongful discharge in violation of North Carolina's public policy under N.C. Gen. Stat. § 143-422.2. The North Carolina Supreme Court has expressly held that section 143-422.2 claims are evaluated under the same evidentiary standards as a Title VII claims. *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing *North Carolina Dep't of Corr. v. Gibson*, 308 N.C. 131, 136-37, 301 S.E.2d 78, 82-85 (1983)). Accordingly, for the reasons discussed above, plaintiff's claim under section 143-422.2 should be dismissed.

D.   **Preclusive Effect of Dismissal**

The court has the discretion to grant a motion to dismiss under Rule 12(b)(6) with or without prejudice. *St. Clair v. Banker Steel Co.*, No. 6:06CV42, 2007 WL 45785, at * 3 (W.D. Va. 5 Jan. 2007) (court dismissed plaintiff's complaint without prejudice and granted plaintiff leave to file an amended complaint correcting deficiencies). Ordinarily, where a defect in the complaint is curable, the court should grant the dismissal without prejudice. *Cloaninger v. McDevitt*, No. 1:06CV135, 2006 WL 2570586, at *11 (W.D.N.C. 3 Sept. 2006) (court granted motion to dismiss without

---

[5] The court further emphasizes that the facts alleged in plaintiff's amended complaint are in sharp contrast to facts that have been held to constitute severe and pervasive unwelcome conduct. *See R & R Ventures*, 244 F.3d at 337, 340 (noting that a male supervisor made sexual jokes and discussed sexual positions and experiences with a 15 year old female on a daily basis, and the supervisor often said women were stupid); *Spencer v. General Electric Co.*, 697 F. Supp. 204, 213, 218-19 (E.D. Va. 1988) (noting that the "workplace was pervaded by sexual innuendo, sexually-oriented games and intimate touching between [the supervisor] and his female subordinates" and that the supervisor often made generally degrading and derogatory comments about women and "exclaimed in the presence of [the plaintiff] and others that women 'have . . . [feces] for brains' and should be 'barefoot and pregnant.'" ), *aff'd*, 894 F.2d 651 (4th Cir. 1990), *abrogated on other grounds by Farrar v. Hobby*, 506 U.S.103 (1992).

prejudice and granted plaintiff leave to amend to accurately assert the dismissed claims); *Threat v. Potter*, No. 3:05CV116, 2006 WL 1582393, at *1 (W.D.N.C. 2 June 2006) ("However, in its discretion, the Court finds that allowing the Plaintiff to amend her Complaint to correct these deficiencies is a wiser course than to order a dismissal at this early stage of the action."). Where, however, a plaintiff has been provided the opportunity to amend and the amendments do not cure the defects, dismissal with prejudice may be appropriate. *See Morris v. Rinker*, No. 3:04CV252, 2005 WL 1027485, at *9 (M.D. Fla. 14 April 2005) (court dismissed pro se plaintiff's claims with prejudice where plaintiff was given opportunity to plead his best case and claims remained legally deficient).

Here, the court provided plaintiff the opportunity to amend her complaint and to do so after having the benefit of defendant's initial dismissal motion and supporting memoranda detailing numerous deficiencies in it. The amendments made by plaintiff were not sufficient, plaintiff has not requested the opportunity to make further amendments, and the deficiencies do not appear to be curable. The dismissal of plaintiff's amended complaint should accordingly be with prejudice.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendant's motion to dismiss (D.E. 21) be GRANTED and this action should be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6).

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and

15

Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 27th day of July, 2009.

                                    James E. Gates
                                    United States Magistrate Judge